15131
CUMMINGS *v.* TWEED
(10 S. E. (2d), 322)

January, 1940.

*Mr. Raymon Schwartz,* for appellant,

*Messrs. McLeod & Shore* and *Shepard K. Nash* for respondent,

July 22, 1940.

The opinion of the Court was delivered by MR. L. D. LIDE, ACTING ASSOCIATE JUSTICE.

L. B. Cummings, the plaintiff above named, was in the employment of S. Finlay Tweed, the defendant above named, and his brother, for about 20 years; and at the time of the injury involved herein plaintiff was a sawyer at the mill operated by the defendant and his brother in Kershaw County. On Saturday afternoon, August 27, 1938, after work at the mill had been completed for the week, the plaintiff at the invitation of the defendant was a guest passenger in his automobile on their way from the sawmill to Sumter. Mr. Tweed was driving the car and Mr. Cummings sat beside him on the front seat. The automobile was a Ford V-8 coach, 1937 model. They were driving on a dirt road called the Pisgah-Dalzell Road which intersected with another dirt road called the Providence Springs-Bishopville Road, and the crossing is referred to in the evidence as Gaillard's Cross Roads. Mr. Tweed's car collided at this crossing with an automobile being driven by a colored man named Goodman who entered the intersection from the Providence Springs-Bishopville Road. The result of this collision was that Goodman was killed and Mr. Cummings sustained serious bodily injuries. The automobile driven by Goodman was an old Chevrolet car.

This action was commenced on October 29, 1938, and the complaint states a cause of action under the guest statute, alleging that the injuries sustained by the plaintiff were due to and caused by the heedlessness and recklessness of the defendant, and judgment was sought in the sum of $7,500.00. The answer denies all allegations of heedlessness and recklessness, and sets up, among other things, the contributory recklessness of the plaintiff, and that the alleged injury to plaintiff was due to the recklessness and negligence of Goodman. The case came on for trial before Judge Mann and a jury on January 9, 1940, resulting in a verdict for the plaintiff in the sum of $4,700.00. From the judgment entered thereon the cause comes to this Court upon an appeal by the defendant. There are eleven exceptions, imputing error to the trial Judge; in the refusal of a nonsuit and a new trial; in his charge to the jury; in permitting counsel by indirection and innuendo to prejudice the defendant by remarks and improper questions and arguments intimating that the defendant was protected by liability insurance; and in refusing a new trial because of the excessive amount of the verdict.

As above stated, this action is based on what is generally designated as the guest statute, incorporated in Section 5908, Code 1932, the pertinent portion of which is as follows: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such automobile, its owner or operator for injury, death or loss, in case of accident unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

This section was construed in the case of *Fulghum v. Bleakley*, 177 S. C., 286, 181 S. E., 30, 32, and it was there held that the purpose of the statute was to limit liability to a guest to a case where his injury was either due to an intentional act on the part of the owner of the car,

or to reckless misconduct on his part, and hence that the statute should be construed as if it read "heedless *and* his reckless disregard of the rights of others," instead of "heedlessness *or* his reckless disregard of the rights of others." In other words, the word *or* in that portion of the statute should be construed as *and,* for the reason that the word "heedlessness" was equivalent to negligence, and the obvious purpose of the statute was to impose liability only where there was something more than mere negligence. The Court says: "Heedless in this connection means careless; it does not add to the significance or the characterization or the force of the act or conduct done in reckless disregard of the rights of others by the owner or operator. Act or conduct in reckless disregard of the rights of others is improper or wrongful conduct, and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation, or property rights of another." Hence, as we have already indicated, this action is based upon the alleged reckless misconduct of the defendant, there being no charge that the accident in question was intentional on his part.

At the close of plaintiff's testimony, however, the defendant moved for a nonsuit on the ground that there was no evidence of recklessness on his part in the operation of the car. But the plaintiff testified that the defendant was driving his car at an excessively high rate of speed, that they were going at 60 miles an hour at a point about 500 yards from the crossing, and that at the time they entered the intersection the speed was still up in the "fifties", and that when they were in 250 to 300 yards of the crossing Goodman's car approaching on the other road to their right was plainly visible, and that he was then about 150 to 200 yards of the crossing, proceeding at a much slower gait. It was further testified by the plaintiff that Mr. Tweed did not slow up just before entering the crossing or sound his horn; and further that he did not apply his brakes, so far as the

plaintiff knew. It is thus apparent that it was a question for the jury as to whether the injury sustained by the plaintiff was proximately caused by the defendant's reckless disregard of plaintiff's rights in the operation of his car at the time and place of the collision.

One of the allegations of recklessness specified in the complaint is the failure to keep a lookout, and as was held in the case of *Spurlin v. Colprovia Products Co.*, 185 S. C., 449, 194 S. E., 332, if any testimony is introduced touching or supporting allegations as to defendant's failure to keep proper lookout or have proper control, it would ordinarily be a question for the jury whether such conduct constituted a reckless disregard of the rights of the passenger, within the meaning of the guest statute. And in the case at bar, in addition to the matter of lookout, the evidence in regard to excessive speed, etc., required the refusal of the motion for a nonsuit.

It should be stated here that the testimony by and on behalf of the defendant raises many serious issues of fact. For the defendant denies that he was driving at an excessive rate of speed, and states that he did not see Goodman's car because his vision was obstructed by an embankment and a corn field, but he does admit that he entered on the crossing without blowing his horn and that it was a "blind crossing" over which he had traveled almost daily for a year and a half. He says:

"Q. You didn't blow your horn? A. No.

"Q. If you had blown your horn do you think this darkey would have come into the road? A. He would have come in anyway.

"Q. How do you know? A. It was a blind crossing."

The defendant in his testimony explicitly denies all charges of recklessness on his part; but the conflicts in the evidence were of course for the jury.

Another ground of the motion for a nonsuit was that the evidence conclusively showed contributory recklessness on

the part of the plaintiff himself, because although cognizant of the rate of speed and his imminent danger he made no protest whatever to the driver of the car, nor gave him any warning.

It is quite true that a guest himself is not relieved from the duty of exercising due care, and he may not abandon the exercise of his own faculties and entrust his safety absolutely to the driver; but on the other hand: "In the absence of any fact or circumstance indicating that the driver is incompetent or careless, an occupant of a vehicle is not required to anticipate negligence on the part of the driver. Thus, in the absence of any fact or circumstance indicating the contrary, he need not anticipate that the driver, who has exclusive control and management of the vehicle, will enter a sphere of danger, omit to exercise proper care to observe the approach of other vehicles, or fail to keep the speed of the vehicle within proper limits, or otherwise improperly increase the common risks of travel." 45 C. J., 1016, 1017.

We are of opinion that whether or not the plaintiff was guilty of contributory recklessness was an issue that could not be determined by the Court, but was for the jury, especially in view of plaintiff's testimony as follows: "He was driving around sixty miles an hour, but I wouldn't say he was driving that fast where the accident happened, but he had not taken up any, and I thought Mr. Tweed, after the other car got almost into the intersection of this road I looked up to say something to Mr. Tweed to remind him of this car coming, and when I did he was looking straight ahead, and about that time everything went black." And he had previously testified that he thought Mr. Tweed was going to stop.

These same grounds were included in the defendant's motion for a new trial, although there was no motion for a directed verdict, but we do not think it necessary to discuss the

testimony in further detail to show that these motions were properly overruled.

The defendant also charges that the trial Judge erred in not granting a new trial on the ground that the testimony is susceptible of but one inference, and that is, that the plaintiff's injuries were due to the negligence and recklessness of Goodman. This point, however, was not mentioned in the grounds of the motion for a nonsuit, and there was no motion made for a directed verdict. Hence the point may be deemed to have been waived. But entirely aside from that, the record is clear that the evidence was ample to warrant the jury in finding that Goodman was neither negligent nor reckless, for the jury might well have concluded from the testimony that Goodman had the right-of-way and that he was driving at a moderate and proper rate of speed, etc.

The presiding Judge submitted the cause to the jury upon a charge which stated the principles of law involved fairly and comprehensively, and the appellant alleges no error of commission therein. He does, however, except to the failure of the Court to make a further charge with reference to the meaning of the word "wantonness". Judge Mann charged the jury that a reckless disregard of the rights of others under the guest statute is correctly defined as follows: "Act or conduct in reckless disregard of the rights of others is improper or wrongful conduct, and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health or reputation or property rights of another."

At the conclusion of the charge the trial Judge asked counsel for the respective parties if he had covered all the law applicable to the case, and counsel for the defendant stated: "There is just one thing, your Honor may have charged it, the defense of recklessness being wanton misconduct, and wantonness being equivalent to wilfulness or intentional wrong." And the defendant's counsel had previously pre-

sented to the Court as a written request to charge the following : "Wantonness is properly defined as a conscious failure to observe due care, an intentional doing of an unlawful act knowing such act to be unlawful, and recklessness is the equivalent to wilfulness or intentional wrong."

Judge Mann, however, did not charge this request, and upon the motion for a new trial he stated that it would have been repetition, at the most.

While the proposed request was entirely correct, we do not think it was substantially different from the proposition which Judge Mann did charge the jury, and we are not surprised that counsel said that the Court "may have charged it," for in effect he did. We are therefore unable to discover any reversible error here.

It will be observed that this was the only request made by counsel for the defendant after the Judge inquired if he had covered all the law applicable to the case. But the defendant now also excepts that the Court should have charged an additional proposition, although it was not requested. Judge Mann charged the jury as follows : "When two vehicles enter an intersection from different highways at the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right." This is the precise language of Subdivision (b) of Section 19 of the Motor Vehicle Act of 1937, Act April 16, 1937, 40 St. at Large, p. 229. But Subdivision (a) of that section is as follows: "The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway." It is contended that this Subdivision (a) should also have been charged, because while Subdivision (b) was applicable to the case if the facts were as indicated by plaintiff's testimony, to wit, that Mr. Tweed's car and Goodman's car entered the intersection at the same time, for in that event Goodman's car would have had the right-of-way. On the other hand, according to Mr. Tweed's testimony, he had entered the inter-

section before Goodman did and hence had the right-of-way under Subdivision (a). However, Judge Mann made it clear that the rule charged applied only where the two vehicles entered *at the same time*. If, therefore, counsel wished any further charge on this subject he should have requested it, especially in view of the question asked by the Court at the conclusion of the charge; and hence there was no error in this respect.

We do not agree with counsel for the respondent that the failure to include this as a ground of the motion for a new trial precludes the appellant from raising the question on appeal; but it does tend to indicate that the appellant's charge of error in this respect was an afterthought.

The defendant in one of the exceptions charges generally, perhaps too generally for consideration, that a new trial should have been granted because the record shows throughout that plaintiff's counsel attempted to, and did, inject into the record by innuendo and insinuation that the defendant carried liability insurance and would not have to pay any verdict that might be rendered against him. There are also specific exceptions along this same line. We have therefore scrutinized the record with the utmost care, but we are unable to find anywhere that any information whatever was imparted to the jury, directly or indirectly, to the effect that the defendant was protected by liability insurance.

One of the specific complaints in this connection relates to certain kodak pictures taken at the crossing, which were introduced in evidence by the defendant. These pictures were offered while the defendant was being examined as a witness, and counsel for the plaintiff objected unless they were properly proven. The defendant testified, however, that he was present when the pictures were taken and that they were a fair representation of the crossing. The Court then allowed them in evidence "for what they are

worth." Upon the cross examination of the defendant by counsel for the plaintiff the following took place:

"Q. Who took these pictures?

"Mr. Schwartz: I object to that. I would like to state the grounds, but I don't think it would be fair to state them before the jury, and if your Honor would let the jury retire I would be glad to state them.

"Mr. Nash: I think counsel should put his grounds in the record, unless he is trying to keep something from the jury.

"Mr. Schwartz: In all the years of my practice I have never tried to conceal anything from the jury, as counsel well knows. But there are certain rules of law—

"The Court: Well let's see what it is. Gentlemen, step into your room.

"Jury retires."

After he was informed (in the absence of the jury) that the photographer was an insurance adjuster, the Court ruled that the identity of the person who took the pictures should be kept from the jury under the circumstances. Upon the return of the jury counsel for the plaintiff then cross examined Mr. Tweed briefly in regard to these pictures and the points from which they were taken, referring to the photographer as "Mr. X". Counsel for the defendant objected to this designation of the photographer, and his argument is that the repeated references to "Mr. X" were prejudicial. But the record does not seem to support this conclusion. It will be remembered that these pictures were voluntarily introduced in behalf of the defendant, although they were taken by a photographer whose identity he could not afford to disclose, and counsel for the plaintiff clearly had the right to inquire of defendant, who was present when the pictures were taken, as to what is shown by them and the places from which they were taken, and since the name of the photographer could not be given reference to him as "Mr. X" does not appear to us to have been objectionable.

Counsel for the defendant also complains, however, that plaintiff's attorney charges him by intimation with trying to conceal something from the jury improperly, to the prejudice of the defendant. Of course, whenever objection is made to any testimony it might be said that the objector is seeking to keep something from the jury, for many of the rules of evidence are directed to the end of excluding from the jury matters deemed by the law to be irrelevant or improper for their information or consideration, and to charge the objector with improper concealment under these circumstances cannot be justified. Hence we disapprove of the statement made by counsel of which complaint is made, for we think attorneys should refrain from comments of this kind. At the same time, it does not appear to us that there was any suggestion or intimation of the remotest character here that the question of insurance was involved, or that the defendant was otherwise prejudiced.

Another matter complained of in this connection grows out of the following, which also occurred in the course of the cross examination of the defendant:

"Q. He made you a faithful servant and you have a kindly feeling towards him? A. Yes.

"And even if this jury brings in a verdict against you you will still have a kind feeling towards him?

"Mr. Schwartz: I object to that, if he is entitled to a verdict he is entitled to it and his feelings in the matter cannot have anything to do with this case.

"The Court: I don't think that is material.

"By Mr. Nash: Q. You don't feel hard toward him, have any malice against him for bringing this suit?

"Mr. Schwartz: I object to that. He has right to bring his suit.

"The Court: I think that is competent.

"By Mr. Nash: Q. You don't feel hard toward him for bringing this suit, do you? A. No, I can't say that I do."

It seems to us that the ruling of the Court as shown ■ by the foregoing excerpt from the record was correct; at least that the defendant could not complain, for it is proper on cross examination of a defendant as a witness to test his credibility by showing whether his relations with the adverse party are friendly or hostile. 70 C. J., 948, 949.

In the case of *Duke v. Parker,* 125 S. C., 442, 118 S. E., 802, 803, the defendant testified on cross examination that "there would be no hard feeling; to bring the suit; as it was up to" *his insurance company;* and of course in that case the Court held that a new trial must be ordered. By reference to the report of that case it will be seen that it was definitely brought out before the jury more than once that the defendant carried indemnity insurance. We quote the following from the opinion in this case: "The evidence adduced under objection is defendant's clear-cut statement that he had told the plaintiff that 'there would be no hard feeling; to bring the suit; that it was up to' his insurance company."

But in the case at bar there was no reference whatever to insurance, and we do not think the questions asked, which are shown in the quoted excerpt, could reasonably be construed as relating to insurance.

The defendant further charges that the Court should ■ ■ have granted a new trial because of improper argument before the jury by one of counsel for the plaintiff. It is quite true that able and experienced advocates, in their zeal for their clients, do sometimes overstep the boundaries of legitimate argument, although they should ever be mindful of their grave responsibility in this respect. However, the Court has heretofore laid down in clear and unmistakable terms the rules which must be followed if exception is to be taken to an improper argument, and it seems scarcely necessary to repeat them; but they are as follows, as stated in the case of *State v. Meehan,* 160 S. C., 111, 158 S. E., 151, 158: "One seeking a new trial because of unfair or

improper argument on the part of counsel for the successful party should show these things: (1) That timely objection was interposed to the argument; (2) the substance, at least, of the objectionable language; (3) the failure of the court to sufficiently warn the jury not to consider the improper argument; and (4) that the result was to materially prejudice the rights of the losing litigant to obtain a fair and impartial trial." See also *State v. McGill,* 191 S. C., 1, 3 S. E. (2d), 257.

But there was no attempt whatever to comply with the rules above set forth by counsel for the defendant here, for the matter was not brought to the attention of the trial Judge until the motion for a new trial was made; and upon this point the motion was based on an affidavit of counsel for the defendant and an affidavit of the sheriff. In the affidavit of counsel for the defendant he charges that one of counsel for the plaintiff made the following statement to the jury at the close of his argument: "You heard Mr. Tweed testify that he and Mr. Cummings were good friends and when this case is over they will still be good friends, regardless of the amount of the verdict, for I do not believe Mr. Tweed cares if Mr. Cummings does get a verdict, and Mr. Schwartz will be paid his fee, whether he wins or loses this case."

Defendant's capable counsel frankly states in his affivadit that at the time the argument was made he did not object because by doing so he would have magnified the point and also because he felt that the plaintiff would not be permitted to hold the verdict if obtained, the argument being in his view manifestly incompetent and prejudicial. Hence he advisedly decided to take his chances of being able to obtain a new trial if the verdict should go against him. Under these circumstances it clearly appears that the trial Judge was correct in refusing a new trial on this ground.

We are not unmindful, however, that in the case of *Price v. American Agricultural Chemical Co.,* 178 S. C., 217, 182 S. E., 637, 640, the rule above stated is

qualified by the following language contained in the opinion of Chief Justice Stabler: "Of course, if this were a 'flagrant case and where prejudice clearly appears,' it would have been the duty of the trial judge, although no objection was made as required by the rule, to have taken proper steps for correcting any wrong that may have been done, even to ordering a mistrial, if necessary."

While the argument to the jury complained of does not meet with our approval, we are unable to say that this is a flagrant case or one where prejudice clearly appears. We think rather that the argument may reasonably be construed as being simply to the effect that because of their long continued friendly business relations the defendant himself recognized the meritorious character of plaintiff's claim, and that the defendant being presumably a solvent and responsible business man would not object to a verdict in favor of plaintiff, and that his attorney's fee would not be dependent upon whether he won or lost the case.

It is further contended by the appellant that the verdict was excessive, and that a new trial should have been granted on this ground. It is of course elementary that this was a matter which rested in the sound discretion of the Circuit Judge. *Steele v. Atlantic C. L. R. R. Co.,* 103 S. C., 102, 87 S. E., 639. The verdict was indeed substantial, but it will be observed that Dr. C. B. Epps, an experienced physician, who testified for the plaintiff, said that the plaintiff's case for broken bones and injuries of that character was, he believed, the worst case that he had ever had. There can be no doubt of the fact that the plaintiff was seriously injured, and we cannot say that the Circuit Judge abused his discretion in allowing this verdict to stand.

It appears that before the trial of this case a suit was instituted in the district Court of the United States for the Eastern District of South Carolina to determine the rights of the interested parties with reference to certain indemnity insurance covering the automobile of Mr.

Tweed; and in this suit that Court held that Mr. Cummings was a guest and not an employee at the time of his alleged injury. At the opening of the trial of the instant case, in the absence of the jury, the attorney for Mr. Tweed presented to the Court a certified copy of the Federal Court's judgment, but with the qualification that he did not wish it disclosed to the jury. Judge Mann stated that it was a novel question and that he would not rule upon it at that time. Nothing further seems to have been said about it during the course of the trial, and Judge Mann made no ruling. In the proposed statement of the case for appeal, however, the defendant set out the facts with reference to this judgment of the Federal Court, but upon objection Judge Mann struck out these references, and there was an appeal taken on this point, the matter stricken out being printed in an Appendix to the Transcript of Record. We think Judge Mann's order settling the case was quite correct, because the judgment in question, relating to the insurance, never became a part of the record in the Court below, and is irrelevant to any of the matters involved in this appeal.

All of the exceptions are overruled and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.